Claudia Kay PRINCE *v.* R & T MOTORS, INC.

CA 97-76                                           953 S.W.2d 62

Court of Appeals of Arkansas
Division IV
Opinion delivered October 1, 1997

18

*Lightle, Beebe, Raney & Bell,* by: *James A. Simpson, Jr.,* for appellant.

*John Patterson, P.A.,* for appellee.

ANDREE LAYTON ROAF, Judge. Claudia Prince has appealed from a deficiency judgment awarded to the appellee, R&T Motors, Inc., by the White County Circuit Court, following the resale of a repossessed automobile. We find no error in the court's entry of summary judgment for appellee and affirm.

Prince purchased a 1991 Chevrolet Blazer from R & T Motors and defaulted on the loan that financed the purchase. After R & T Motors repossessed the Blazer, it sent notice, dated August 16, 1993, by certified mail, with restricted delivery, to

Prince in Plano, Texas, that it would sell the Blazer at a public sale at 3004 Hawkins Drive, Searcy, Arkansas, at 10:00 a.m. on September 8, 1993. The notice also provided that Prince would be liable for any deficiency remaining after the proceeds of the sale were applied to R & T Motors' costs of retaking and attorney's fees and the outstanding debt. It also informed her that she could redeem the vehicle at any time before sale by paying R & T Motors $16,992.98 plus the expenses of repossession, repair, and preparation for sale. Prince received the notice and signed the return card. The Blazer was sold on September 8, 1993, to Carder Buick for $8,500. R & T Motors filed this action against Prince for the deficiency of $8,704.17.

On July 16, 1996, R & T Motors filed a motion for summary judgment supported by the affidavit of George Carder, III, R & T Motors' vice president, in which he stated in pertinent part:

. . .

8. R&T Motors, Inc. notified Ms. Prince of the proposed public sale of the vehicle by certified mail, which was received by Ms. Prince on August 19, 1993. See Exhibits 2 and 3.

9. R&T Motors, Inc. caused a notice of public sale to be published in the Searcy *Daily Citizen*, a newspaper having county-wide circulation, on August 18, 1993, and August 19, 1993. See exhibit 4.

10. Pursuant to the notice, the sale was conducted on September 8, 1993, at the time and place designated in the notice.

11. At the commencement of the sale, a representative for R&T Motors, Inc. publicly announced the sale to all persons on the premises.

12. At the sale, Ron Peyton, representing Carder Buick, submitted a bid of $8,500.00, which was accepted.

13. R&T Motors, Inc. notified Ms. Prince of the amount of the deficiency in the sum of $8,704.17 and made demand for payment.

R & T Motors also filed copies of the installment sales contract, the notice of sale that it sent to Prince, the certified mail return card signed by Prince, and proof of publication of the notice of sale.

In response to the motion for summary judgment, Prince argued that genuine issues of fact remained to be tried regarding the commercial reasonableness of the sale and whether R & T Motors had sustained any damages. Prince attached a copy of a September 1, 1993, used truck and van guide showing the value of the Blazer at the time of its sale following repossession to be over $12,000. Prince later amended her response to the motion for summary judgment and filed the affidavit of her husband, Rick Prince, in which he stated that the value of the Blazer was in excess of $16,000.

On August 20, 1996, the circuit judge filed an opinion letter in which he stated that insufficient price alone does not make the sale commercially unreasonable. He stated that, because Prince relied only upon the inadequacy of the sale price, no fact was in dispute. He found the sale to be commercially reasonable and granted summary judgment to R & T Motors.

A hearing was held on the total amount of the judgment on September 25, 1996. At this hearing, Prince again argued that summary judgment was inappropriate because the sale was not commercially reasonable. The circuit judge replied:

> [Y]ou were given every opportunity by affidavit to say what was wrong with the sale, and all you said was that the amount received for the car was made at a commercially unreasonable sale, and I ruled that that alone was not good enough. Now if you have got anything else, say so.

The circuit judge entered judgment for R & T Motors for the deficiency of $8,704.17, prejudgment interest in the amount of $2,394.21, interest from the date of judgment at 10%, and attorney's fees in the amount of $3,500.

On appeal, Prince argues that, after she raised the defense that the sale was not commercially reasonable, the circuit judge should have required R & T Motors to prove that it conducted the sale in a commercially reasonable manner. As before, however, Prince points to no fact, other than the sale price of the Blazer, as evidence that the sale was not conducted in a commercially reasonable manner.

Summary judgment should be granted only when a review of the pleadings, depositions, and other filings reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Wirth v. Reynolds Metals Co.*, 58 Ark. App. 161, 947 S.W.2d 401 (1997). All proof submitted must be considered in the light most favorable to the nonmoving party, and any doubts or inferences must be resolved against the moving party. *Id.* Once the moving party makes a prima facie showing of entitlement, the opposing party must meet proof with proof by showing a genuine issue of material fact. *Id.* When a prima facie showing is made, the adverse party may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Id.*; Ark. R. Civ. P. 56(e). Where the facts are not disputed and the law can be applied, a summary judgment is an appropriate means of avoiding the expense and time of a formal trial. *Neel v. Citizens First State Bank*, 28 Ark. App. 116, 771 S.W.2d 303 (1989).

It is true that a party that has sold collateral in violation of the Uniform Commercial Code is not entitled to a deficiency judgment. *Bank of Bearden v. Simpson*, 305 Ark. 326, 808 S.W.2d 341 (1991); *First State Bank of Morrilton v. Hallett*, 291 Ark. 37, 722 S.W.2d 555 (1987). Arkansas Code Annotated § 4-9-504(3) (Repl. 1991) provides:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms, *but every aspect of the disposition including the method, manner, time, place, and terms must be commercially reasonable.*

(Emphasis added.)

As this code section requires, the primary concern of both debtor and creditor is that every aspect of the disposition of the collateral be conducted in a commercially reasonable fashion. *Holiman v. Hagan's Motors, Inc.*, 32 Ark. App. 62, 796 S.W.2d 356 (1990). However, the court stated in *Holiman* that "[w]here the debtor is concerned over the price received for the trade-in or the collateral, he should challenge the aspect of the sale which he feels

has made the disposition commercially unreasonable so as to result in an insufficient price." *Id.* at 64, 796 S.W.2d at 357-58. The burden is on the secured party as the plaintiff to establish the deficiency, and if the secured party's handling of the disposition of the collateral is attacked, it has the burden of proving that every aspect of that disposition was commercially reasonable. *Id.* at 64, 796 S.W.2d at 358. *Accord Henry v. Trickey,* 9 Ark. App. 47, 653 S.W.2d 138 (1983). Whether a sale of collateral was conducted in a commercially reasonable manner is essentially a factual question. *Beard v. Ford Motor Credit Co.,* 41 Ark. App. 174, 850 S.W.2d 23 (1993); *Cheshire v. Walt Bennett Ford, Inc.,* 31 Ark. App. 90, 788 S.W.2d 490 (1990); *Jones v. Union Motor Co.,* 29 Ark. App. 166, 779 S.W.2d 537 (1989).

However, in Arkansas, sale price alone is not dispositive of whether a sale is commercially reasonable. Arkansas Code Annotated § 4-9-507(2) (Repl. 1991) provides: "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." Moreover, in *Thrower v. Union Lincoln-Mercury, Inc.,* 282 Ark. 585, 590, 670 S.W.2d 430, 433 (1984), the Arkansas Supreme Court discussed the relevance of the price received upon resale of the collateral or of a trade-in accepted as a part of the transaction:

> [T]here are many elements in any such sale which must be considered to see if the disposition was commercially reasonable and some degree of flexibility must be allowed to assure that unfair practices do not go undetected, or that the creditor is not held to any particularly hard and fast rules. § 85-9-507(2) states in part: "The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner." Also, whether the collateral is sold wholesale instead of retail is not necessarily determinative of commercial unreasonableness. . . . Any difference between the fair market value and the price actually received, however, is ordinarily a material consideration, but this fact must be examined in light of all aspects of the sale to determine commercial reasonableness. (Citations omitted.)

Further, in *Goodin v. Farmers Tractor & Equip. Co.*, 249 Ark. 30, 33, 458 S.W.2d 419, 421 (1970), the supreme court stated:

> The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself . . . sufficient to establish that the sale was not made in a commercially reasonable manner. Ark. Stat. Ann. 85-9-507(2). Yet that precise proof — that a better price could have been obtained by a sale at a different time and in a different method — comprised the only substantial evidence adduced by Goodin upon the point at issue. What little case authority there is upon this provision of the Code indicates that decidedly stronger proof is needed to establish commercial unreasonableness. In view of the precise language of the Code we are unable to say that the appellant's meager proof made the necessary prima facie showing that Farmers's public sale was not commercially reasonable. (Citations omitted.)

Accordingly, we hold that R & T Motors established a prima facie case that the sale was conducted in a commercially reasonable manner and that Prince failed to "meet proof with proof" in response. In support of its motion for summary judgment, R & T Motors submitted evidence, by affidavit and otherwise, as to every relevant detail of the disposition of the collateral. In response, however, Prince produced no evidence, other than the bare assertion that a better price might have been realized, to show that the sale was conducted in a commercially unreasonable fashion. Moreover, she has provided no convincing argument or authority to persuade us that the rules governing summary judgments in general do not apply in cases such as this. Even when the defendant-debtor raises the defense that the sale was conducted in a commercially unreasonable manner, summary judgment may be awarded if the debtor fails to "meet proof with proof" in response to the motion for summary judgment. Because Prince made no challenge to any other aspect of the repossession and sale, we hold that she failed to demonstrate that a material question of fact remained for trial.

Affirmed.

BIRD and ROGERS, JJ., agree.